UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

RONNYANN M. MOREAU,                    :
       Plaintiff,                          :
                                          :
       v.                                  :     C.A. No. 15-490M
                                          :
CAROLYN W. COLVIN, ACTING              :
COMMISSIONER OF SOCIAL SECURITY,       :
       Defendant.                          :

**REPORT AND RECOMMENDATION**

Patricia A. Sullivan, United States Magistrate Judge

      This matter is before the Court on Plaintiff's motion for reversal of the decision of the

Commissioner of Social Security (the "Commissioner"), denying Disability Insurance Benefits

("DIB") and Supplemental Security Income ("SSI") under §§ 205(g) and 1631(c)(3) of the

Social Security Act, 42 U.S.C. §§ 405(g), 1383(c)(3) (the "Act").  Plaintiff contends that the

Administrative Law Judge ("ALJ") erred in his evaluation of Plaintiff's credibility and that the

ALJ's mental residual functional capacity ("RFC")[1] findings were not supported by substantial

evidence.  Defendant Carolyn W. Colvin ("Defendant") has filed a motion for an order affirming

the Commissioner's decision.

      This matter has been referred to me for preliminary review, findings and recommended

disposition pursuant to 28 U.S.C. § 636(b)(1)(B).  Having reviewed the entire record, I find no

material legal error and that the ALJ's findings are well supported by substantial evidence.

Accordingly, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner

---

[1] Residual functional capacity is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

(ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.

## I.    Background Facts

### A.    Plaintiff's Background

On her alleged disability onset date (March 1, 2012), Plaintiff was forty years old.  Tr. 183.  She had earned her GED and worked fairly consistently until the alleged onset of disability as a cashier, a leasing specialist, and a customer order clerk.  Tr. 211.  Her SSI and DIB applications were filed on June 26, 2012, claiming disability based both on physical impairments arising from migraines and arm, knee, back, wrist and elbow pain, and on mental impairments due to "bipolar, fear of death, depression, anxiety, impulsive behavior/outbursts."  Tr. 210.  Her claim of physical disability was rejected by the ALJ, who found that her physical impairments were non-severe and that her statements and testimony to the contrary lacked credibility. Plaintiff does not challenge these findings; her allegations regarding physical impairments will not be discussed further in this report and recommendation.

Throughout the period of alleged disability, Plaintiff lived at times with some, at times with all, of her four children, a grandchild and unspecified pets.  She was the primary caretaker for the younger children, including participating in the care of her grandchild.  Tr. 279, 354. According to the medical record and her statements, she engaged in a wide range of activities, including light chores and laundry, driving, using public transportation, shopping, reading, attending her son's graduation and sports events, taking a vacation, texting friends and socializing with her mother.  See, e.g., Tr. 22-23, 354.  Also throughout the period of disability, in addition to her physical complaints, Plaintiff was treated for depression and anxiety, primarily by a nurse working with her primary care physician and by a licensed mental health counselor, as

well as, for a six-month stretch, by a psychiatrist and once by the staff at Rhode Island Hospital's

("RIH") partial hospitalization program ("PHP").  These treating records are replete with her

descriptions of her difficulties with depression and anger and the challenge of controlling her

temper when she is around other people.  See, e.g., Tr. 264, 371, 510, 518.  Notwithstanding

these concerns, the record reflects only one brush with the law – a disorderly conduct charge

from an unspecified time in the past (not during the period of alleged disability) that resulted

either in no incarceration or an overnight in jail and was expunged.  Tr. 354, 368, 375.  Over the

course of the relevant period, Plaintiff's Global Assessment of Functioning ("GAF") score was

assessed by various providers; [2] these scores, particularly following treatment, generally fell into

range for moderate to mild symptoms or difficulties. [3]  Despite her claims of anger and irritability

---

[2] The GAF scores relevant to this case are as follows:

- The 71-80 range, which indicates symptoms that are "transient and an expectable reaction to psychosocial stressors" or "no more than slight impairment in social, occupation, or school functioning;"
- The 61-70 range, which indicates "some mild symptoms" or "some difficulty in social, occupational, or school functioning . . . but generally function pretty well;"
- The 51-60 range, which indicates "moderate difficulty in social, occupational, or school functioning;"
- The 41-50 range, which indicates "serious impairment in social, occupational, or school functioning;"
- The 31-40 range, which indicates "[s]ome impairment in reality testing or communication."

See Diagnostic and Statistical Manual of Mental Disorders, Text Revision 32–34 (4th ed. 2000) ("DSM–IV–TR"). In 2013, the DSM has eliminated the GAF scale because of 'its conceptual lack of clarity . . . and questionable psychometrics in routine practice.'"  Santiago v. Comm'r of Soc. Sec., No. 1:13-CV-01216, 2014 WL 903115, at *5 n.6 (N.D. Ohio Mar. 7, 2014) (citing Diagnostic and Statistical Manual of Mental Disorders at 16 (5th ed. 2013) ("DSM-5")).

[3] Nurse Katelyn Pio, who worked with Plaintiff's primary care physician and saw Plaintiff regularly over the years from onset through at least 2014, sometimes included GAF scores in her treatment notes; these ranged from moderate symptoms (GAF 51) assessed in April 2012, to mild symptoms (GAF 65) assessed from July 2013 through April 2014, to slight symptoms (GAF 75) assessed in May 2014.  Tr. 297, 300, 531, 536, 553, 557.  The psychiatrist (Dr. Rashid) who saw Plaintiff for the first six months of 2013 made an initial assessment of major impairment (GAF 40) at the first appointment, but increased his assessment to moderate symptoms (GAF 52) after the second appointment and maintained her score at moderate for the rest of his treating relationship.  Tr. 358-70.  During Plaintiff's pre-onset (May 2011) participation in the RIH PHP, staff made an intake assessment reflective of major impairment (GAF 40) but increased it to moderate (GAF 55) when she was discharged ten days later.  Tr. 264-74. Plaintiff did not complete treatment during her next stay at RIH PHP; she was discharged early for excessive absence.  Tr. 371.  This time, her intake GAF was 40, while the GAF score after she stopped treatment before completion was 50 (serious symptoms).  Tr. 371-72.  Finally, the SSA consulting psychologist, Dr. Surti, who saw Plaintiff only once, assessed her GAF as ranging between 45 and 50 (serious symptoms).  Tr. 355.

directed towards other people, including anger with other patients when she received treatment in a group setting, the record does not reflect that Plaintiff engaged in violent or inappropriate behavior directed towards treatment providers.  See, e.g., Tr. 273 (Plaintiff assessed by RIH staff as having cooperative manner and unremarkable speech); Tr. 369 (Dr. Rashid notes that speech, language and appearance normal); Tr. 451 (Plaintiff described by physical therapy provider as "pleasant, polite, anxious, motivated, cooperative").  Nevertheless, the mental status examinations reflected in the treating notes consistently record that her mood and affect are sad, depressed, anxious, angry, irritable or tearful.  See, e.g., Tr. 274, 369; see Tr. 294 (Nurse Pio does not do full mental status examination but does review depression guidelines and finds Plaintiff meets criteria).

### B. Mental Health History

Prior to onset, Plaintiff was treated in the RIH PHP from March 3 to March 13, 2011, for family stress, depression, social isolation, tearfulness, and anger outbursts, resulting in her fear that she would act out on her anger impulses.  Tr. 264.  At discharge, staff noted an improvement of her mood and a reduction of the symptoms of depression, anxiety and anger.  Id.  The RIH staff made an intake assessment reflective of major impairment (GAF 40), but increased their assessment to moderate symptoms (GAF 55) when she was discharged ten days later.  Tr. 264-74.  Shortly after onset, in May 2012, Plaintiff was admitted again to RIH PHP, but attended for only five days before being discharged on May 7, 2012, for excessive absences.[4]  Tr. 371.

Throughout the period of alleged disability, Plaintiff's primary mental health treating source was Nurse Katelyn Pio, who worked in the office of Plaintiff's primary care physician, Dr. Joyce Coppola.  Tr. 276-317, 510-58.  Nurse Pio's notes record Plaintiff's subjective

---

[4] Plaintiff told Nurse Pio that she left the RIH PHP because she felt it was making her more angry and manic, and that she discontinued the Prozac and Depakote prescribed for her there because she did not feel they were helping. Tr. 485.

complaints of mood swings, irritability, violent outbursts, and increased depression and anxiety. Tr. 459, 462, 479. However, apart from somewhat consistently making clinical inquiry into the diagnostic criteria for depression, e.g., Tr. 300, 303, these notes do not reflect that a mental status examination or other objective testing or clinical methods were ever deployed, except that Nurse Pio occasionally recorded a GAF assessment. Tr. 297, 300, 531, 536, 553, 557. These GAF scores range from GAF 51 (moderate symptoms) to GAF 75 (slight symptoms). Id. Nurse Pio prescribed medication and referred Plaintiff to counseling. By mid-2012 and thereafter, Nurse Pio's notes mostly reflect that Plaintiff was doing well, although at some appointments she reported difficulties. Tr. 306 ("she feels like she has better control of her emotions"); Tr. 315 ("feeling well"); Tr. 510 ("two episodes of destructive behavior . . . throwing objects, punching walls"); Tr. 515 ("feeling well"); Tr. 539 ("feeling not well," son in jail, daughter's house foreclosed, grandchild molested); Tr. 556 ("depression more stable").

Also during the period of alleged disability, Plaintiff apparently met regularly for therapy with a licensed mental health counselor, Mr. Phillip Lowry. Tr. 318-19, 562-65. Apart from his two opinions, which were submitted in August 2012 and May 2014, it is impossible to know what clinical observations and findings he might have made or how frequently he saw Plaintiff because none of his treating notes were submitted.[5] On January 29, 2013, Plaintiff started treatment with an RIH psychiatrist, Dr. Wasim Rashid. Tr. 368-70. At intake, Dr. Rashid diagnosed major depressive disorder, recurrent, moderate, estimated her GAF at 50 and prescribed Remeron; after he began treatment, her GAF score was increased to and sustained at 52 (moderate symptoms). Tr. 358-65. Except for his observations of angry mood and thought content reflective of worthlessness and guilt, Dr. Rashid's findings on mental status

---

[5] In his 2014 opinion, Mr. Lowry wrote, "Refer to the Progress notes I submitted." Tr. 563. No such notes appear in the record. At the hearing, the ALJ asked Plaintiff's counsel whether the record was complete. Tr. 39. She confirmed that it was. Tr. 39.

examinations were generally within normal limits.  Tr. 358-70.  For reasons not disclosed in the

record, the treating relationship with Dr. Rashid ended on July 2, 2013.  Tr. 358.

## C.  Opinion Evidence

On August 6, 2012, the counselor, Mr. Lowry, submitted a letter in support of Plaintiff's

disability claim in which he reported diagnoses of major depressive disorder, recurrent,

moderate, generalized anxiety disorder, parent-child relational problem, and personality disorder

not otherwise specified, together with a GAF score of 51 (moderate symptoms).  Based on her

"enduring pattern of very poor interpersonal functioning and impulse control," he opined that

"these behaviors will impact her ability to work by: not being able to get along with co-workers,

being unable to accept instructions and criticisms from any supervisor, and being unable to

interact appropriately with the general public" and that "[h]er ability to follow simple

instructions when angered would be poor."  Tr. 318.

On September 21, 2012, Nurse Pio completed a one-page form opining that Plaintiff was

"significantly limited" (the worst category on the form) in every mental health function listed on

the form.  Tr. 381.  These findings resulted in her conclusion that Plaintiff could not engage in

any employment, education, or skills training on a daily or weekly basis.  Tr. 381.  Nurse Pio's

contemporaneous treatment note is completely inconsistent: on September 17, 2012, she wrote

that "[Plaintiff] is feeling well . . . is independent in all ADL's . . . is tolerating all medications

well . . . [and] has no acute complaints at this time."  Tr. 515.

On February 7, 2013, Plaintiff was examined by SSA consultative psychiatrist Dr.

Ghulam Mustafa Surti.  Tr. 353-56.  Plaintiff told Dr. Surti that her depressive symptoms were a

9 on a scale of 1 to 10.  Tr. 353.  On mental status examination, Plaintiff was able to perform

serial 3s from 100 to 79 with no mistakes; memory registration was three out of three, but recall

was one out of three.  Tr. 354.  Her affect was sad and tearful and her mood was depressed; her speech and thought process were linear and goal-directed.  Tr. 354.  Dr. Surti diagnosed major depression, recurrent, severe, and estimated her GAF at 45 to 50.  Tr. 355.

On October 29, 2013, State agency consultant psychologist Clifford Gordon, Ed.D., reviewed Plaintiff's records as of that date and determined that she was suffering various severe mental impairments: affective, anxiety, and personality disorders.  Tr. 105, 117.  His RFC opinion concludes that Plaintiff's memory and concentration limitations would limit her to "simple instructions only," but that she "retains ability to complete a normal eight-hour work day and normal work week," although her moodiness and violent outbursts would restrict her to "work in [a] situation where she is more involved with production/objects and less involved in social[ly] demanding situation."  Tr. 108, 120.

On May 24, 2014, Mr. Lowry submitted a second letter, this time with two RFC forms. Tr. 562-65.  In the first, he found that most of Plaintiff's limitations were moderate, but that she has marked limitations in her abilities to deal with detailed instructions or to work with others, including the general public, supervisors or co-workers.  Tr. 559-60.  In the other RFC, he made similar findings, in addition to the conclusion that she has a moderate restriction of daily activities.  Tr. 563-64.  As the source for these opinions, he mentions his missing progress notes, but also noted that he did not rely on any psychological evaluation because none had been obtained.  Tr. 564.  Based on these findings, he concluded that Plaintiff would likely be absent from work about once a month, and could not sustain full-time, ongoing, competitive work.  Tr. 565.

## II.     **Travel of the Case**

Plaintiff filed DIB and SSI applications on June 26, 2012, alleging disability commencing March 1, 2012, due to bipolar disorder, depression, anxiety, and other mental disorders. Tr. 176-77, 183, 210. Following denial of her claim, initially and at reconsideration, a hearing was held on June 12, 2014. Tr. 37-74. On June 27, 2014, an unfavorable decision issued. Tr. 13-32. The Appeals Council denied review on October 30, 2015. A timely appeal brought the matter to this Court.

III.     **The ALJ's Hearing and Decision**

Plaintiff, represented by counsel, appeared and testified on June 12, 2014; a vocational expert ("VE") also testified. Tr. 37-74. Plaintiff averred that she stayed in bed all day for about one week out of every month. Tr. 57-59. She described her difficulties in being around people and said she would overreact or go "ballistic" in response to things like being cut off in traffic, although she also testified that she has a couple of friends with whom she texts about five times a week. Tr. 60-61. She claimed to experience weekly panic attacks, during which she felt like she couldn't breathe. Tr. 64.

To the VE, the ALJ posed a hypothetical based on a claimant limited to work at the exertionally light level; with the ability to understand, remember, and carry out simple, routine, repetitive tasks with breaks every two hours; no interaction with the public; only occasional, work-related, non-personal, non-social interaction with co-workers and supervisors involving no more than a brief exchange of information or hand-off of product; and work that could be performed with a wrist-immobilizing splint. Tr. 68. The VE testified that Plaintiff's past work would be precluded, but that the assembly jobs at the light and sedentary levels would be suitable and existed in significant numbers. Id. When the ALJ modified the hypothetical to assume that the claimant would be off task daily for an hour, would miss work for at least two days a month,

or could not interact appropriately with supervisors and coworkers on a consistent basis, the VE testified that these additional limits would rule out all work.  Tr. 70-71.

The ALJ issued his decision under the familiar five-step sequential evaluation process. At Step One, he found that Plaintiff had not engaged in substantial gainful activity since March 1, 2012, her onset date.  Tr. 18.  At Steps 2 and 3, the ALJ found that affective disorder, anxiety disorder, and personality disorder were severe impairments, but that they did not meet or medically equal the requirements of any *per se* disabling impairment under the regulatory Listing of Impairments.  Tr. 19-24.  Based on the finding (among others) that Plaintiff's "testimony is not entirely credible," the ALJ determined that Plaintiff retained the RFC to perform work with non-exertional limitations to understanding, remembering, and carrying out simple, routine, repetitive tasks with breaks every two hours; no interaction with the general public; only occasional work-related, non-personal, non-social interactions with coworkers and supervisors involving no more than a brief exchange of information or hand-off of product; and work that could be performed with a wrist-immobilizing splint.  Tr. 24.  With this RFC, at Steps 4 and 5, the ALJ found that Plaintiff could not perform any of her past work but could perform jobs existing in significant numbers in the national and regional economies.  Tr. 31.  Accordingly, the ALJ concluded that Plaintiff was not disabled from March 1, 2012, through the date of his decision.  Tr. 32.

## IV.   Issues Presented

Plaintiff's motion for reversal rests on two arguments – that the ALJ's mental RFC findings were not supported by substantial evidence and that the ALJ erred in his evaluation of Plaintiff's credibility.

## V.   Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999).  Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); see also Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human Servs., 654 F.2d 127, 128 (1st Cir. 1981).

The determination of substantiality is based upon an evaluation of the record as a whole. Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).  Thus, the Court's role in reviewing the Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.  Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the courts."  Id. at 31 (citing Richardson v. Perales, 402 U.S. 389, 399 (1971)).  A claimant's complaints alone cannot provide a basis for entitlement when they are not supported by medical evidence.  See Avery v. Sec'y of Health & Human Servs., 797 F.2d 19, 20-21 (1st Cir. 1986); 20 C.F.R. § 404.1529(a).

The Court must reverse the ALJ's decision if the ALJ applied incorrect law or failed to provide the Court with sufficient reasoning to determine that the law was applied properly. Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145-46 (11th Cir. 1991).  Remand is unnecessary when the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) (citing Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985)).  The Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g); under Sentence Six of 42 U.S.C. § 405(g); or under both sentences. Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir. 1996).  To remand under Sentence Four, the Court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Seavey, 276 F.3d at 9; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).  In contrast, Sentence Six of 42 U.S.C. § 405(g) provides:

> The court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g).  To remand under Sentence Six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Evangelista v. Sec'y of Health & Human Servs., 826 F.2d 136, 139-43 (1st Cir. 1987).

## VI.     Disability Determination

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A.      Treating Physicians and Other Sources

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there are good reasons to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(c).  If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques, and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  Konuch v. Astrue, No. 11-193L, 2012 WL 5032667, at *4-5 (D.R.I. Sept. 13, 2012); 20 C.F.R. § 404.1527(c)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275-76 (1st Cir. 1988).  The ALJ's decision must articulate the weight given, providing "good reasons" for the determination.  See Sargent v. Astrue, No. CA 11–220 ML, 2012 WL 5413132, at *7-8, 11-12 (D.R.I. Sept. 20, 2012) (where ALJ failed to point to evidence to support weight accorded treating source opinion, court will not speculate and try to glean from the record; remand so that ALJ can explicitly set forth findings).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence

of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

When a treating physician's opinion does not warrant controlling weight, the ALJ must

nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and

the frequency of examination; (2) nature and extent of the treatment relationship; (3) medical

evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in

the medical conditions at issue; and (6) other factors which tend to support or contradict the

opinion.  20 C.F.R § 404.1527(c).  However, a treating physician's opinion is generally entitled

to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(c)(2).

A treating source who is not a licensed physician or psychologist[6] is not an "acceptable

medical source."  20 C.F.R. § 404.1513; SSR 06-03p, 2006 WL 2263437, at *2 (Aug. 9, 2006).

Only an acceptable medical source may provide a medical opinion entitled to controlling weight

to establish the existence of a medically determinable impairment.  SSR 06-03p, 2006 WL

2263437, at *2.  An "other source," such as a nurse practitioner or licensed clinical social

worker, is not an "acceptable medical source," and cannot establish the existence of a medically

determinable impairment, though such a source may provide insight into the severity of an

impairment, including its impact on the individual's ability to function.  Id. at *2-3.  In general,

an opinion from an "other source" is not entitled to the same deference as an opinion from a

treating physician or psychologist.  Id. at *5.  Nevertheless, the opinions of medical sources who

are not "acceptable medical sources" are important and should be evaluated on key issues such

as severity and functional effects, along with other relevant evidence in the file.  Id. at *4.

The ALJ is required to review all of the medical findings and other evidence that support

a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for

---

[6] The regulations recognize other categories of providers as acceptable medical sources for certain impairments; for example, a licensed optometrist is acceptable for measurement of visual acuity and visual fields.  SSR 06-03p, 2006 WL 2263437, at *1.

making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(d).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity ("RFC"), <u>see</u> 20 C.F.R. § 404.1545-1546, or the application of vocational factors because that ultimate determination is the province of the Commissioner.  20 C.F.R. § 404.1527(d); <u>see also</u> <u>Dudley v. Sec'y of Health & Human Servs.</u>, 816 F.2d 792, 794 (1st Cir. 1987) (per curiam).

### B.   Making Credibility Determinations

Where an ALJ decides not to credit a claimant's testimony, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  <u>See</u> <u>Da Rosa v. Sec'y of Health & Human Servs.</u>, 803 F.2d 24, 26 (1st Cir. 1986); <u>Rohrberg</u>, 26 F. Supp. 2d at 309-10.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  <u>See</u> <u>Frustaglia</u>, 829 F.2d at 195.  The lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  <u>See</u> <u>Smallwood v. Schweiker</u>, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding." <u>Foote v. Chater</u>, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting <u>Tieniber v. Heckler</u>, 720 F.2d 1251, 1255 (11th Cir. 1983)).

### VII.   <u>Analysis</u>

### A.   ALJ's Mental RFC Finding

In support of her argument that the ALJ's RFC is erroneously based on findings that are not supported by substantial evidence, Plaintiff asks the Court to focus on the many record references to her violent outbursts and her avoidance of situations where she would have to deal with other people, as well as on the conclusions in the Lowry and Pio opinions and in the Surti examination report. She contends that the ALJ failed adequately to explain why he failed to find such evidence consistent with severe functional limitation, and that the ALJ erred in affording only limited weight to Lowry and Pio.

The Court's review of the record and the ALJ's thoughtful and detailed decision confirms that the ALJ did carefully consider and weigh all of the evidence to which Plaintiff now points, including the findings in the Surti report, together with the other evidence of record. Tr. 24-27. In evaluating the significance of this evidence, the ALJ relied on SSA examining psychologist, Dr. Gordon, who is an "acceptable medical source[ ]" and a "highly qualified . . . expert[ ] in Social Security disability evaluation." 20 C.F.R. § 404.1527(e)(2)(i). Further, as the ALJ lays out in his analysis, the RFC decision is well anchored in the overall evidence, including Plaintiff's wide ranging activities, which are reflected in her own statements about her vacation, attendance at her son's sports events, driving, shopping, and caring for children, a grandchild, and pets, all of which is confirmed by Nurse Pio's consistent finding that she is "independent in all ADLs." Tr. 25-27. Similarly, the ALJ also properly examined the records from the period after Dr. Gordon's file review and correctly concluded that they are consistent so that "the subsequent evidence does not warrant a change." Tr. 29. The Court's review confirms that there is no error here either – indeed, almost all of the post-Gordon treating record consists of Nurse Pio's notes, which reflect that Plaintiff's depression was stable, increasing occasionally in response to family stress. In addition, the Court notes the dramatic increase in Plaintiff's GAF

score to 75.  Tr. 539, 557; <u>see also</u> Tr. 451 (physical therapy notes from 2014 reflect that Plaintiff was pleasant and cooperative).  <u>See, e.g.</u>, <u>Bowden v. Astrue</u>, Civ. No. 11-084, 2012 WL 1999469, at *5-9 (D.R.I. June 4, 2012); <u>see also</u> <u>Anderson v.  Astrue</u>, Civ. No. 11-476, 2012 WL 5256294,  at *3  (D.  Me. Sept. 27, 2012); <u>Abubakar v. Astrue</u>, Civ. No. 11-10456, 2012 WL 957623, at *11 (D. Mass. Mar. 21, 2012).

What remains is Plaintiff's challenge to the ALJ's assignment of "little evidentiary weight" to the Lowry and Pio's opinions.  Both concluded that Plaintiff was impaired by essentially work-preclusive mental functional limitations.[7]  Tr. 29.  While Plaintiff concedes that neither is an "acceptable medical source," she argues that their opinions are corroborated by the treatment notes and should have been afforded greater weight.

The ALJ rejected the Lowry and Pio opinions because their findings were inconsistent with the rest of the record.  There is no error that taints this finding.  The ALJ properly scoured the record and noted that the Lowry findings were inconsistent with Plaintiff's largely sound mental status examinations results (except for her depressed and angry mood), the consistent reports by multiple sources that she improved with treatment, and Plaintiff's self-report of her many activities.  Notably, Mr. Lowry's opinions from May 2014 are completely inconsistent with Nurse Pio's contemporaneous 2014 assessments that Plaintiff's mental status had improved to the point where her GAF was assessed at 65 (April 2014) and then 75 (May 2014).  <u>See</u> Tr. 553, 557.  Similarly, Nurse Pio's opinion is completely inconsistent with her own contemporaneous treating note, which states that Plaintiff was "feeling well. . . . independent in all ADLs. . . . tolerating all medications well. . . . no acute complaints at this time."  Tr. 515.  Finally, neither the Lowry nor the Pio opinions are supported by objective medical evidence.  20

---

[7] Both Mr. Lowry and Nurse Pio opined that they believe that Plaintiff is unable to work, Tr. 381, 562, 565.  To that extent, their opinions encroached upon the ALJ's prerogative to determine the ultimate issue of disability; the ALJ properly disregarded these conclusions.  <u>See</u> 20 C.F.R. § 404.1527(d)(1), (3).

C.F.R. § 404.1527(c)(2-3) (treating physician opinion entitled to controlling weight only if

"well-supported by medically acceptable clinical and laboratory diagnostic techniques"; weight

given other opinions depends on degree to which they are based on medical signs and laboratory

findings).  For Mr. Lowry, it is impossible to know what he might have relied on – Plaintiff did

not submit his treating notes and his opinion concedes that, to his knowledge, no psychological

evaluation had been obtained.  Tr. 564.  While Nurse Pio's notes are available, they do not

appear to include any data from clinical diagnostic techniques, including any mental status

examinations; apart from a review of the criteria of depression, Nurse Pio merely recounts

Plaintiff's subjective symptoms.  Tr. 294-317, 510-55.

At bottom, Plaintiff's appeal appears to be no more than a request that this Court should

reweigh the evidence to come to a different conclusion.  Such a do-over exceeds the scope of

judicial review in Social Security disability cases.  See, e.g., Johnson v. Barnhart, 434 F.3d 650,

653 (4th Cir. 2005) (in reviewing an ALJ's decision for substantial evidence, the court cannot

"reweigh conflicting evidence, make credibility determinations, or substitute our judgment for

that of the [ALJ]").  Rather, the relevant inquiry is whether the ALJ's findings are supported by

substantial evidence.  See 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social

Security as to any fact, if supported by substantial evidence, shall be conclusive.").  I find that

they are.  Accordingly, I recommend that this Court reject Plaintiff's challenge to the ALJ's RFC

and affirm this aspect of the Commissioner's decision.

### B.     ALJ's Credibility Finding

Plaintiff's critique of the ALJ's adverse credibility finding may be given short shrift.  As

the ALJ noted, Plaintiff testified that she frequently never got out of bed and that she could not

say how much she could walk because "I haven't really walked," yet she was able to shop, care

for her younger children and grandchild, attend her son's graduation and basketball games (with headphones), and go on vacation.  Tr. 57-59, 65, 227-29, 243-45, 352.  Similarly, she claimed to have weekly panic attacks, yet there is no reference in the record to such symptoms.  See Tr. 64.  Finally, her testimony regarding the debilitating nature of her inability to function around other people is belied by the mental status examinations results, which consistently reflect such findings as cooperative manner, appropriate appearance and normal speech.  See, e.g., Tr. 273, 354, 359.  While there is no doubt that the medical record also supports Plaintiff's claims of anger and outbursts resulting in limits on her ability to deal with other people, the ALJ incorporated such limits into the RFC.

In short, the ALJ found Plaintiff's complaints of disabling mental functional limitations to be less than fully credible for well-supported reasons.  Under such circumstances, "this Court is mindful of the need to tread softly, because it is the responsibility of the Commissioner to determine issues of credibility and to draw inferences from the record."  Cruz v. Astrue, Civ. No. 11-638, 2013 WL 795063, at *16 (D.R.I. Feb. 12, 2013) ("The ALJ's credibility determination, which is based upon [his] observation of the plaintiff, evaluation of demeanor, and consideration of how [the] testimony fits in with the rest of the evidence, is entitled to deference."), adopted, 2013 WL 802986 (D.R.I. Mar. 4, 2013).  Accordingly, I find that the ALJ's credibility findings are well supported by substantial evidence and recommend that they be affirmed.

**VIII.   Conclusion**

Based on the foregoing, I recommend that Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 10) be DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 11) be GRANTED.  Any objection to this report and recommendation must be specific and must be served and filed with the Clerk of the Court

within fourteen (14) days after its service on the objecting party.  <u>See</u> Fed. R. Civ. P. 72(b)(2);

DRI LR Cv 72(d).  Failure to file specific objections in a timely manner constitutes waiver of the

right to review by the district judge and the right to appeal the Court's decision.  <u>See</u> <u>United</u>

<u>States v. Lugo Guerrero</u>, 524 F.3d 5, 14 (1st Cir. 2008); <u>Park Motor Mart, Inc. v. Ford Motor</u>

<u>Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ Patricia A. Sullivan</u>
PATRICIA A. SULLIVAN
United States Magistrate Judge
August 17, 2016